**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT DISTRICT OF MAINE**

| | |
|---|---|
| MICHAEL LAZAREV, | |
| Plaintiff, | **Case No.: 2:25-cv-00430-SDN** |
| v. | Judge Stacey D. Neumann |
| HOLLIE KENNIFF, | Magistrate Judge Karen Frink Wolf |
| Defendant. | |

**Motion of Eugene Volokh to Unseal the Complaint (ECF No. 1)**

Eugene Volokh moves to unseal the Complaint (ECF No. 1), under the First Amendment and common-law rights of access to court records. Plaintiff and Defendant oppose the motion.

**Memorandum in Support of Motions**

**Introduction**

**I.    The public has a presumptive First Amendment right to access the Complaint.**

The public has "a qualified First Amendment right of access to certain judicial proceedings and documents." *In re Bos. Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003). Indeed, this right extends to Complaints shortly after they are filed, before a court would normally render any decision in the case: "Plaintiffs have a *presumptive* First Amendment right of access to newly filed complaints, which attaches upon a court's receipt of such complaints." *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 66 (2d Cir. 2025) (emphasis in original). "[T]he press and the public have a First Amendment right of access to newly filed, non-confidential civil complaints," which "attaches when

1

a complaint is filed with, or submitted to, the courts." *Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1263 (10th Cir. 2022).

"The First Amendment secures a right of timely access to publicly available civil complaints that arises before any judicial action upon them." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 600 (9th Cir. 2020). "[T]he press and public enjoy a First Amendment right of access to newly filed civil complaints." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) (rejecting the argument that this presumption is absent "before a court takes some action in a case," *id.* at 326). The presumption vests even before court action partly because of "the immediate consequences precipitated by filing a complaint, consequences that the public must promptly understand if it is to help improve the quality of the judicial system by subjecting it to the cleansing effects of exposure and public accountability." *Id.* at 327 (cleaned up).

> For example, a complaint instantaneously invokes a court's jurisdiction, and jurisdictional questions often implicate the public's confidence in judicial power. Moreover, a complaint carries significant implications for the parties' substantive legal rights and duties, by, among other things, triggering an obligation to preserve evidence and, in some cases, triggering a statute of limitations. This is especially true given that some complaints are withdrawn or cause the parties to settle before any judicial action is taken.

*Id.* at 328. *See also Courthouse News Serv. v. Planet*, 947 F.3d at 592-93 ("Some civil complaints may *never* come up for judicial evaluation because they may prompt the parties to settle. The public still has a right to know that the filing of the complaint in our courts influenced the settlement of the dispute . . . .").

Likewise, *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 21 (1st Cir. 2022), relied on this right of access to allow a First Amendment claim to go forward challenging delays of "up to six calendar days" in releasing newly filed Complaints. The parties

there—including the State of Maine Judicial Branch court administrator—"agree[d] that there is a qualified First Amendment right in the public to access newly filed complaints." *Id.* at 20. And the First Circuit's analysis suggests it endorsed that agreement. *See, e.g.*, *id.* ("Plaintiffs have plausibly alleged that the [state court rules delaying access] violate their right to access such complaints."); *id.* at 21 ("But at minimum, taking the allegations in the first amended complaint as true, the plaintiffs have stated a claim for violating the qualified public right of access.").

Though the First Circuit observed there that a 1992 case had "express[ed] doubt as to extension of qualified public right of access to civil proceedings," *id.* at 20 (referring to "a qualified First Amendment right"), it noted in an accompanying footnote that "each of our sister circuits that has considered whether the right extends to at least some documents and proceedings in civil cases concluded that it does," *id.* at 20 n.8 (citing decisions from seven other circuit courts). And *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), reaffirmed that, "The courts of appeals have recognized a qualified First Amendment right of public access to certain documents filed in civil litigation." *Id.* at 67 (citing *Courthouse News Serv. v. Quinlan*)).

## II.  The public has a presumptive common-law right of access to the Complaint.

"[T]here is also a presumption of public access to judicial records under the common law." *In re Bos. Herald, Inc.*, 321 F.3d at 189 (citations and quotation omitted). "Only the most compelling reasons can justify non-disclosure of judicial records." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (cleaned up). "Although the two rights of access [the constitutional and common-law rights] are not

3

coterminous, courts have employed much the same type of screen in evaluating their applicability to particular claims." *In re Providence Journal Co. Inc.*, 293 F.3d 1, 10 (1st Cir. 2002). As a member of the public and the press, Volokh is entitled to a "presumption" of "a common-law right of access to judicial documents." *Id.* at 9 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)).

Complaints are quintessential "judicial documents," even when the case is voluntarily dismissed shortly after the Complaint is filed, and before the Court takes any action on the Complaint. That is indeed what happened in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016). There, as here, the case was voluntarily dismissed a few weeks after it was filed (13 days, compared to the 23 days in this case). *Id.* at 138-39. Yet the Second Circuit held "that pleadings—even in settled cases—are judicial records subject to a presumption of public access," *id.* at 140, under both the First Amendment and common-law rights of access:

> "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Fed. Trade Comm'n v. Abbvie Prods. LLC,* 713 F.3d 54, 62 (11th Cir. 2013) . . . .

> The fact that a suit is ultimately settled without a judgment on the merits does not impair the "judicial record" status of pleadings. It is true that settlement of a case precludes the judicial determination of the pleadings' veracity and legal sufficiency. But attorneys and others submitting pleadings are under an obligation to ensure, when submitting pleadings, that "the factual contentions [made] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3).

> In any event, the fact of filing a complaint, whatever its veracity, is a significant matter of record. Even in the settlement context, the inspection of pleadings allows the public to discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the

4

settlement rates in different areas of law, and the types of materials that are likely to be sealed. Thus, pleadings are considered judicial records even when the case is pending before judgment or resolved by settlement.

*Id.* (cleaned up, one paragraph break added).

The same logic applies fully here. Nor does it matter that the *Bernstein* case was voluntarily dismissed because of a settlement, while this case was voluntarily dismissed to be litigated elsewhere. The right of public access remains equally implicated in both situations.

### III.  The presumption of public access is not rebutted here.

The Motion to Seal argued that this case should be sealed because "Public access to these materials would serve little to no public value while creating a substantial risk of unnecessary invasion of privacy and further dissemination of private information." Mot. to Seal 2-3. The logic of *Bernstein*, discussed above, explains why public access to a Complaint such as this one does have value. And the presence of "private information" in this case cannot justify total sealing of the Complaint.

First, "[t]o overcome the First Amendment right of access, the proponent of sealing must demonstrate that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record; specific, on-the-record findings are required." *Bernstein*, 814 F.3d at 144-45 (cleaned up). The motion to seal cites no cases that show Complaints can be wholly sealed simply because the case involves "private information"—a commonplace feature of many lawsuits.

5

Indeed, defamation cases routinely include private and potentially highly embarrassing information and allegations about both parties, yet defamation cases are litigated in public. *See, e.g., Doe v. Doe*, 85 F.4th 206, 210-11, 217 (4th Cir. 2023) (refusing to allow pseudonymity in a defamation case, even when the alleged defamation involved allegations of sexual assault, notwithstanding the plaintiff's concern about privacy); *Roe v. Smith*, 116 Cal. App. 5th 227, 241-42 (2025) (likewise); *Doe v. Roe*, No. 23-cv-01149-NYMKLM, 2023 WL 4562543, *3 (D. Colo. July 17, 2023) (likewise); *D.L. v. J.S.*, No. 1:23-CV-1122-RP, 2023 WL 8102409, *3 (W.D. Tex. Nov. 21, 2023) (likewise); *Doe v. Ahrens*, No. 25 C 02565, 2025 WL 2301391, *2 (N.D. Ill. July 30, 2025) (likewise). (Pseudonymity cases are relevant here because pseudonymity decisions are closely related to sealing decisions, and the presumption against pseudonymity stems from, among other things, "the right of public access to judicial proceedings and documents under the common law and First Amendment." *Doe v. MIT*, 46 F.4th at 68.) "[T]he mere presence of allegedly libelous statements is not enough, on its own, to justify keeping matters secret from the public." *Jacobs v. J. Publ'g Co.*, No. 1:21-CV-00690-MV-SCY, 2022 WL 540955 (D.N.M. Feb. 23, 2022) (refusing to allow sealing of allegedly defamatory material in defamation case); *see also Mastriano v. Gregory*, No. CIV-24-567-F, 2024 WL 4003343 (W.D. Okla. Aug. 26, 2024) (likewise); *Parson v. Farley*, 352 F. Supp. 3d 1141, 1154-55 (N.D. Okla. 2018) (likewise); *Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*, No. CV 2020-0468-JRS, 2020 WL 6799122, *4 (Del. Ch. Nov. 19, 2020) (likewise).

Nor does it matter that "[t]he same Complaint and exhibits were subsequently filed in a parallel state court action that remains pending. By agreement of the parties, the state court granted a motion to seal those pleadings based on the same privacy concerns at issue here." Mot. to Seal 2. "[F]ederal law governs motions to seal records in federal court even when a state law addresses the type of records at issue." *Haynes v. Haggerty*, No. 19-CV-00164, 2020 WL 2557230, at *5 (D. Vt. May 19, 2020) (declining to apply state statute requiring sealing of state cases alleging childhood sexual or physical abuse). "[A] plaintiff cannot rely on the ruling of the state court, which applies a broader standard [for allowing pseudonymity] than federal court, to justify proceeding pseudonymously in federal court." *Blattberg v. Breskin*, No. 1:26-CV-11011-RGS, 2026 WL 1283508, at *1 (D. Mass. May 8, 2026). "[T]he state court's order sealing Delgado's case neither binds federal courts nor supersedes federal law." *United States v. Delgado*, No. 13-CR-1991-JGZ-2, 2022 WL 17177668, *1 (D. Ariz. Nov. 23, 2022). Likewise, here, a party cannot rely on a state court sealing decision in an uncited "parallel state court action" to evade the federal law recognizing a right of access to federal court filings.

## IV.  Sealing of the Complaint is especially improper given the seven months that it had been publicly available.

The Complaint was filed on Aug. 25, 2025. The case was voluntarily dismissed on Sept. 17, 2025. But the motion to seal was not filed until Mar. 24, 2026; it was granted Mar. 25, 2026, seven months after the Complaint was filed.

Yet even when information is released into the public record because of a *court*'s error, it should generally not be sealed after the fact, much less seven months after

the fact. Thus, in *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 144 (2d Cir. 2004) (citation omitted), the district court had mentioned "the magnitude of the settlement amount—theretofore confidential—in [its] Order." The Second Circuit concluded this disclosure "was a serious abuse of discretion" on the district court's part. *Id.* But once it was disclosed, the court concluded, it could not be retroactively sealed:

> The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.

> [Footnote:] This is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb)—is publicly disclosed. Once it is public, it necessarily remains public. As Judge Richard Owen, of the United States District Court for the Southern District of New York, once aptly reminded the author of this opinion while he was acting as counsel for a party at trial: "Once the cat is out of the bag, the ball game is over."

*Id.* at 144 & n.11 (cleaned up). This reasoning is even more apt when the ongoing disclosure was a result of a defendant's decision not to seek sealing for many months after the cat had escaped.

## V.   If any material in the Complaint must be concealed, that should be done through modest redactions rather than total sealing.

Finally, "[c]ourts have an obligation to consider all reasonable alternatives to foreclosing the constitutional right of access." *In re Providence Journal Co.,* 293 F.3d at 15 (citing *In re Globe Newspaper Co.,* 729 F.2d 47, 56 (1st Cir. 1984)). "Redaction constitutes a time-tested means of minimizing any intrusion on that right." *Id.*

"[W]here the public's right of access competes with privacy rights, it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *United States*

8

*v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (cleaned up). Here, even if there is a compelling interest in maintaining the secrecy of some material in the Complaint, the Court may redact that material instead of completely sealing the document. Though defendant asserts that "redaction would be impracticable and insufficient because the sensitive material is pervasive throughout the filings," Mot. to Seal 3, that appears to be a bare assertion, without detailed analysis.

## Conclusion

Volokh has a First Amendment and common law right to access the Complaint in this case. He therefore asks this Court to unseal the Complaint, if necessary with narrow redactions.

Respectfully submitted,

s/ Eugene Volokh
Eugene Volokh, *pro se*
Senior Fellow, Hoover Institution
Stanford University
434 Galvez Mall
Stanford, CA 94305
volokh@stanford.edu
(650) 725-9845
*Affiliation for addressing and identification purposes only*

June 4, 2026

## Certificate of Service

I certify that I electronically filed this motion on June 4, 2026 using CM/ECF, which will provide notice to all counsel of record.

s/ Eugene Volokh

9